```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

KEVIN RIEGEL, an individual,

      Plaintiff,

v.                                  Case No: 2:23-cv-1133-JES-KCD

THE SCHOOL BOARD OF LEE COUNTY, FLORIDA, a political subdivision of the State of Florida,

      Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of defendant's Motion to Dismiss Amended Complaint (Doc. #21) filed on January 23, 2024. Plaintiff filed a Response (Doc. #26) on February 12, 2024. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

As alleged in the Amended Complaint (Doc. #14), plaintiff Kevin Riegel (Plaintiff or Riegel) was employed by the School Board of Lee County, Florida (Defendant or School Board) from 2011 until 2013 in "various roles." During the 2012-2013 school year, Plaintiff discovered that Principal Jackie Corey was mismanaging funds and a personnel position. Plaintiff also discovered another Principal (Jeff Spiro) had made material misrepresentations to the

State of Florida on his renewal application for his teaching certificate by failing to inform the State of his prior arrests. Plaintiff signed written complaints to local officials, and Defendant thereafter placed Plaintiff on administrative leave without any disciplinary basis. Plaintiff was asked to, and did, participate in investigations conducted by the Florida Office of Inspector General (OIG). Defendant thereafter declined to renew Plaintiff's employment contract in June 2013.

As a private citizen, Plaintiff continued to uncover violations and other misdeeds by the School Board or its employees:

- In 2016, Plaintiff unearthed evidence of TIFF Fund mismanagement and more information on Principal Jeff Spiro. Plaintiff reported the information in writing to the OIG. Plaintiff was later invited to lunch by an unnamed School Board member, who informed Plaintiff he needed to stop digging and insinuated that his status could change making him employable by the School Board.
- Starting at the end of 2017, Plaintiff continued his whistleblowing activity, sending information to the OIG and the Attorney General's Office (AG).
- In 2020, Jeff Spiro and then-Superintendent Adkins asked Plaintiff to stop digging, insinuating that if he did

2

       stop he would no longer be categorized as ineligible for rehire.

- In April 2021, after completion of Plaintiff's dissemination of documents to the OIG and AG, then-Superintendent Adkins announced his retirement. Numerous policy changes mandated by the State were then put in place.

In or around June 2022, Plaintiff applied to be the School Board's Director of Risk Management, a new position in a new department under the Financial Services Department wing of the school district. Unknown to Plaintiff, Dr. Ami Desamours was the head of that department, and she had been included in Plaintiff's prior whistleblowing correspondence. The position was posted, would sit dormant, would come down weeks later, and then would be re-posted without the School Board contacting Plaintiff. Plaintiff asserts he was not contacted about the position because he had been categorized as ineligible for rehire based on the School Board's policy of categorizing employees who petition the government for redress of grievances as being ineligible for rehire. (Doc. #14, ¶¶ 24, 29.) Plaintiff also asserts that the School Board would not allow him in the Financial Services Department because 80% to 90% of his whistleblowing involved some financial fraud on the part of the School Board. On September 15,

2023, Defendant hired William Wilson, who Plaintiff asserts is objectively not more qualified than Plaintiff.

The Amended Complaint further alleges that on an unspecified occasion Defendant rejected Plaintiff's application for a position on the audit committee for the same "ineligible for rehire" reasons, and "even more so" because Plaintiff would have been privy to the School Board's sensitive documents. (Doc. #14, ¶ 27.)

Plaintiff has filed a two-count Amended Complaint. (Doc. #14.) Count I alleges a claim pursuant to 42 U.S.C. § 1983 asserting that the School Board's failure to rehire Plaintiff was retaliation for Plaintiff exercising his First Amendment rights. Count II alleges a state-law claim of retaliation under Florida's Public Whistleblower Act (PWA) for his disclosures.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires

4

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

The School Board seeks to dismiss the federal claim in Count I for failure to state a claim upon which relief may be granted. The School Board further asks the Court to then decline jurisdiction over the state-law claim in Count II.

### A. Relevant First Amendment Principles

"The First Amendment applies to the states through incorporation by the Due Process Clause of the Fourteenth Amendment." Turner v. Williams, 65 F.4th 564, 579 (11th Cir. 2023) (citing Near v. Minnesota ex rel. Olson, 283 U.S. 697, 707 (1931)). "'The [First] Amendment protects not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right.'" Turner, 65 F.4th at 579-80 (citation omitted). See also DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1288 (11th Cir. 2019) (same). "As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." Nieves v. Bartlett, 587 U.S. ___, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks and citation omitted).

To state a claim for First Amendment retaliation under § 1983, a plaintiff must plead that (1) plaintiff engaged in constitutionally protected speech and/or petition activity, (2) defendant's retaliatory conduct adversely affected the protected speech and/or petition activity, and (3) a causal connection existed between the retaliatory conduct and the adverse effect on plaintiff's speech or petition right. See Warren v. DeSantis, 90 F.4th 1115, 1127 (11th Cir. 2024); Zen Group, Inc. v. Agency for Health Care Admin., 80 F.4th 1319, 1329 (11th Cir. 2023).

As to the first element, Constitutional protection extends to speech regarding governmental misconduct because such speech lies at the core of the First Amendment." Butterworth v. Smith, 494 U.S. 624, 632 (1990) (citations omitted). See also Bryson v. City of Waycross, 888 F.2d 1562, 1566 (11th Cir. 1989) (noting that "a core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption"). Whether the First Amendment protects a particular activity is a question of law. Warren, 90 F.4th at 1127.

As to the second element, "[t]o be considered an adverse employment action in a First Amendment retaliation case, the complained-of action must involve an important condition of employment." Stavropoulos v. Firestone, 361 F.3d 610, 619 (11th Cir. 2004), abrogation recognized, Bell v. Sheriff of Broward Cnty., 6 F.4th 1374, 1377 (11th Cir. 2021). This element is satisfied when the alleged employment action would likely chill the exercise of constitutionally protected speech. Turner, 65 F.4th at 580; Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005). Refusal to hire is, as a matter of law, an important condition of employment. Akins v. Fulton Cnty., Ga., 420 F.3d 1293, 1300 (11th Cir. 2005); Goffer v. Marbury, 956 F.2d 1045, 1049 n.1 (11th Cir. 1992).

The third element of a First Amendment retaliation claim requires plaintiff to allege and ultimately establish a "causal

connection" between the defendant's "retaliatory animus" and the plaintiff's "subsequent injury." Nieves, 587 U.S. at ___, 139 S. Ct. at 1722 (quoting Hartman v. Moore, 547 U.S. 250, 259 (2006)). The desire to retaliate must be the "but-for" cause of the challenged employment action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013). In other words, the Complaint must allege that the retaliatory motive caused the injury. This means that, taking Plaintiff's alleged facts as true, it must be plausible that, had the School Board not had any ill will toward Plaintiff, Plaintiff would not have been denied employment with the School Board. Turner, 65 F.4th at 581.

Where the § 1983 action is against a local unit of government, Plaintiff must allege and ultimately prove that an official government policy was the moving force which caused the constitutional injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)).

> A plaintiff can establish municipal liability under Monell in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights. See Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966-68 (11th Cir. 2002).

Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla., 48 F.4th 1222, 1229 (11th Cir. 2022). See also Christmas v. Nabors, 76

8

F.4th 1320, 1329 (11th Cir. 2023) (discussing second method). The third method to establish a policy is only satisfied if "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S 469, 481 (1986). In Florida, school superintendents do not have final policymaking authority regarding employment decisions. Chabad Chayil, 48 F.4th at 1230 (citing Greene v. Sch. Bd. of Hamilton Cnty., 444 So. 2d 500, 501 (Fla. 1st DCA 1984)); Mizzell-Bullock v. Seminole Cnty. Pub. Sch., 23-11599, 2024 WL 65199, at *4 (11th Cir. Jan. 5, 2024) (citing Chabad Chayil).

### B. Application of First Amendment Principles

Because the matter is before the Court on a Rule 12(b)(6) motion to dismiss, the question is whether Plaintiff plausibly alleged that the School Board retaliated against him for exercising his First Amendment rights. Bell v. Sheriff of Broward Cnty., 6 F.4th 1374, 1376-77 (11th Cir. 2021) (citing Twombly 550 U.S. at 556-67). The Court therefore examines each of the elements of the § 1983 claim and the allegations in the Amended Complaint.

**(1)  Protected Activity**

"[T]he School Board concedes that complaints against a public entity of public concerns is a protected constitutional right under the First Amendment...." (Doc. #21, p. 8.) This is clearly correct, and includes, as matter of law, speech and petition

9

activities concerning governmental misconduct and whistle-blowing activities. Butterworth, 494 U.S. at 632; Bryson, 888 F.2d at 1566.

While conceding the legal principle, the School Board argues that the Amended Complaint fails to "allege a deprivation of his First Amendment rights." (Doc. #21, p. 8.) This element of the claim focuses on the conduct of Plaintiff, asking whether his conduct constituted the exercise of a First Amendment right. The School Board, however, focuses on the conduct of others and on matters which do not relate to whether First Amendment conduct by Plaintiff was at issue. (Id. at 8-9.) The Court finds that the Amended Complaint sufficiently alleges conduct by Plaintiff which easily falls within the scope of the First Amendment. (Doc. #14 at ¶¶ 8, 9, 10, 11, 14, 16, 17, 21, 28.)

### (2) Adverse Employment Action

As a matter of law, the refusal to hire is an important condition of employment and therefore is an adverse employment action under a § 1983 claim of First Amendment retaliation. Akins, 420 F.3d at 1300; Goffer, 956 F.2d at 1049 n.1. There are three possible events mentioned in the Amended Complaint which may be the basis for a retaliation claim[1], and at least one of them must

---

[1] At various places in Count I, the Amended Complaint refers to the underlying claim in the plural, i.e., that Plaintiff was qualified for the "positions" he applied for (Doc. #14, ¶ 37), and

be sufficiently pled.  Fed R. Cv. P. 8(d)(2).  As it turns out, only one of them is sufficiently pled.

**(a)   2013 Nonrenewal of Contract**

Plaintiff's initial employment with the School Board ended in June 2013 when the School Board declined to renew his contract. (Id. at ¶ 12.)  The Amended Complaint alleges that this non-renewal was in retaliation for his prior First Amendment activities.  (Doc. #14 at ¶¶ 12, 15.) But, as the School Board correctly argues, this cannot form the basis for a First Amendment claim.

This refusal to rehire cannot form the basis for the § 1983 claim because the face of the Amended Complaint establishes that the claim is barred by the statute of limitations.  The statute of limitations for a Section 1983 claim is four years.  Doe as Next Friend of Doe #6 v. Swearingen, 51 F.4th 1295, 1302-03 (11th Cir. 2022).  "'A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.'" S. Y. v. Wyndham Hotels & Resorts, Inc., 521 F. Supp. 3d 1173, 1191 (M.D. Fla. 2021) (quoting United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018)).  The

---

refers to "violations" of his First Amendment rights (Id. at ¶ 42) and seeks damages he would have received had he obtained the "positions".  (Id. "Wherefore" paragraph.)

11

Amended Complaint asserts that Plaintiff's employment with the School Board ended in June 2013 when the School Board declined to renew Plaintiff's contract. The Amended Complaint asserts, and Plaintiff argues, that this nonrenewal was for reporting and participating in the OIG investigation in 2012-2013. (Doc. #14, ¶¶ 12, 15; Doc. #21, p. 23.) If this nonrenewal is intended as a basis for the § 1983 claim, it is apparent from the face of the Amended Complaint that the claim is time-barred since the nonrenewal occurred more than ten years prior to the filing of the original Complaint in state court on November 6, 2023. If this is intended as the basis for the § 1983 claim, it is dismissed without prejudice.

**(b) Director of Risk Management Position**

The Amended Complaint alleges that Plaintiff applied for a position as Director of Risk Management in or around June 2022, and he was not considered for the position based on the School Board's policy. (Id. at ¶¶ 23-26, 29.) The position which went to another person in 2023. A claim based on this event is not barred by the statute of limitations, and the Court concludes that the facts in the Amended Complaint set forth a plausible basis to be considered an adverse employment action.

**(c) Audit Committee Position**

The third possible event occurred on an unspecified occasion when the School Board rejected Plaintiff's application for a

position on the audit committee. This rejection was based on the same policy reasons, and "even more so" because Plaintiff would have been privy to Defendant's sensitive documents. (Doc. #14, ¶ 27.)

If this is intended as the basis for a First Amendment retaliation claim, it fails. While it is not facially barred by the statute of limitations (since no date is alleged), there are no facts which establish that placement on an audit committee is employment or that failure to be placed on an audit committee is an important condition of employment. If a claim was intended to be based on this event, the claim is not plausible and is therefore dismissed without prejudice.

### (3) Causation; Official Policy

Much of the School Board's argument relates to asserted defects in the pleading of the official policy required for municipal liability. The Court concludes that none of these arguments justify dismissal of the claim relating to the Director of Risk Management position.

The School Board argues that to constitute a policy for which liability may attach, the policy must have been formulated with "deliberate indifference to its known or obvious consequences." (Doc. #21, pp. 7-8) (citing Davis v. DeKalb Cty. Sch. Dist., 233 F.3d 1367, 1375 (11th Cir. 2000)). But the action referred to in Davis was not the formulation of the policy, but the conduct which

13

was alleged to have violated plaintiff's rights.  Id.  The custom, policy, or practice which satisfies Monell need not have been formulated with deliberate indifference.

The School Board also argues that the Amended Complaint failed to sufficiently allege that the School Board created a "policy or custom" to deprive Plaintiff of his First Amendment rights. (Doc. #21, pp. 9-12.)  The Court finds the Amended Complaint to be sufficient in this regard.

The Eleventh Circuit has summarized the relevant legal principles:

> A local government body, such as the School Board in this case, is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A plaintiff can establish § 1983 liability by identifying that she has been deprived of constitutional rights by either an express policy or a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotes omitted) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)) ….
>
> It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation. The "official policy or custom must be the moving force of the constitutional violation in order to

> establish liability of a government body under § 1983." <u>Gilmere v. City of Atlanta, Ga.</u>, 737 F.2d 894, 901 (11th Cir. 1984) (internal quotes omitted). A plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Bd. of the County Comm'rs v. Brown</u>, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

<u>Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.</u>, 285 F.3d 962, 966–67 (11th Cir. 2002).

The alleged custom, policy or practice is described in the Amended Complaint as follows:

> Because he [Plaintiff] exercised his free speech rights and acted a whistleblower, the Defendant – through the Superintendent – categorized him as being ineligible for rehire. **This is consistent with the Defendant's official policy and practice to categorize any employee who had the temerity to bring claims against the Defendant as being ineligible for rehire.**
>
> This is evidenced by the dozens – if not hundreds – of settlement agreements the Defendant has entered into with current or former employees where they are required to either resign or waive any right to future employment with the public Defendant. The Defendant also categorizes employees as being ineligible for rehire where no settlement was reached. **In other words, although maybe not authorized by written law or express municipal policy, the Defendant has a permanent, well-settled and widespread practice of categorizing employees like RIEGEL as being ineligible for rehire when they exercise their right to petition the government for redress of grievances.**

15

(Doc. #14, ¶ 22)(emphasis added).  Thus, Plaintiff has alleged that the School Board has a policy that categorizes employees as ineligible for rehire when they exercise their right to petition the government.  The descriptions of Plaintiff's own experiences and the settlements plausibly state that a policy is the moving force behind the deprivation, even if they may ultimately prove unconvincing.

The School Board also argues that it cannot be vicariously liable for the acts of its employees, including the Superintendent, who is alleged to have established the policy.  Defendant contends that Plaintiff failed to plausibly allege that the Superintendent had decision-making authority for the School Board.  The Amended Complaint alleges that the Superintendent is vested with final decision-making authority on personnel hiring and can take action constituting official policy, including categorizing plaintiff as ineligible for rehire.  (Doc. #14, ¶ 19.)   Florida law says a superintendent cannot do so.  Chabad Chayil, 48 F.4th at 1230; Greene, 444 So. 2d at 501; Mizzell-Bullock, 2024 WL 65199, at *4; K.M. v. Sch. Bd. of Lee Cnty. Fla., 150 F. App'x 953, 957 (11th Cir. 2005) ("Under Florida law, final policymaking authority for a school district is vested in the School Board. Fla. Stat. Ann. § 230. 22(1) (2001) (now codified at § 1001.41). The Superintendent may recommend policies to the School Board, but is not given authority to make final policy without the Board's approval.")

16

But Plaintiff need not assert that the Superintendent had final decision-making authority.

> [I]dentifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement." Hoefling [v. City of Miami, 811 F.3d 1271, 1280 (11th Cir. 2016)] (quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002)). [Plaintiff] needed only to "allege a policy, practice, or custom of the [School Board] which caused the violation of his First Amendment rights." Id.

Christmas v. Nabors, 76 F.4th 1320, 1329-30 (11th Cir. 2023). The Court finds that Plaintiff has satisfied his pleading obligation as to this matter.

The Amended Complaint also alleges that "Defendant has a permanent, well-settled and widespread practice of categorizing employees" like plaintiff "when they exercise their right to petition the government for redress of grievances." (doc. #14, ¶ 22.) Such a practice may be the basis for liability.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss (Doc. #21) is **GRANTED IN PART AND DENIED IN PART.** Those portions of the Amended Complaint which assert a First Amendment claim under § 1983 founded on Plaintiff's non-renewal of employment in June 2013 and his failure to be appointed to an audit committee are **dismissed without prejudice.**

17

The motion is denied as to the refusal to hire for the Director of Risk Management position.

**DONE AND ORDERED** at Fort Myers, Florida, this __1st__ day of April 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record