```
          UNITED STATES DISTRICT COURT
           MIDDLE DISTRICT OF FLORIDA
              FORT MYERS DIVISION
```

KEVIN RIEGEL,

       Plaintiff,

v.                           Case No:   2:23-cv-1133-JES-KCD

THE SCHOOL BOARD OF LEE
COUNTY, FLORIDA, a
political subdivision of
the State of Florida,

       Defendant.
_____

## OPINION AND ORDER

This matter now comes before the Court on the Motion for Summary Judgment (Doc. #37) filed on May 2, 2025, by Defendant The School Board of Lee County, Florida (the "Board" or "Defendant"). Plaintiff Kevin Riegel ("Riegel" or "Plaintiff") filed a Response in Opposition (Doc. #39) on May 23, 2025. The Board filed a Reply in Support (Doc. #42) on June 6, 2025.

For the reasons set forth below, the Board's Motion for Summary Judgment (Doc. #37) is **GRANTED**.

**I.**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hickson

Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004). In ruling on a motion for summary judgment, a court views all evidence and draws all reasonable inferences in favor of the non-movant. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).

The First Amendment not only protects the right to speak, but also "the right to be free from retaliation by a public official for the exercise of that right." Turner v. Williams, 65 F.4th 564, 579-80 (11th Cir. 2023) (citation omitted). See also Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019); DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1288 (11th Cir. 2019).

To avoid summary judgment on a speech-based retaliation claim under either 42 U.S.C. § 1983 or the Florida Public Whistleblower Act ("PWA"), a plaintiff must provide evidence of (1) his protected speech, (2) the defendant's adverse action, and (3) a causal connection between his speech and the defendant's conduct. See Warren v. DeSantis, 90 F.4th 1115, 1127 (11th Cir. 2024); Zen Group, Inc. v. Agency for Health Care Admin., 80 F.4th 1319, 1329 (11th Cir. 2023); Elver v. Hendry Cnty. Sheriff's Off., 791 F. App'x 56, 58 (11th Cir. 2019) (applying Title VII's retaliation analysis and burden-shifting framework to PWA claims).

Although the Eleventh Circuit has recognized the "convincing mosaic" as an alternative to McDonnell Douglas burden-shifting, it has clarified that both are merely "two paths to the same destin-

ation — the ordinary summary judgment standard." McCreight v. AuburnBank, 117 F.4th 1322, 1335 (11th Cir. 2024).

The first element of retaliation is met.[1] As to the second element, actions are "adverse" when they are likely to chill the exercise of protected speech. Turner, 65 F.4th at 580. A refusal to hire, when proven, may be adverse. Akins v. Fulton Cnty., Ga., 420 F.3d 1293, 1300 (11th Cir. 2005). The critical question is whether the challenged conduct would, "objectively, chill or deter" protected speech. Bell v. Sheriff of Broward Cnty., 6 F.4th 1374, 1379 (11th Cir. 2021). That question is resolved "narrowly," on the "circumstances" of the case. Id. at 1378-79.[2]

The third element requires the plaintiff to show a "causal connection" between the defendant's "retaliatory animus" and the plaintiff's "subsequent injury." Nieves, 139 S. Ct. at 1722 (quoting Hartman v. Moore, 547 U.S. 250, 259 (2006)). The desire to retaliate must be the "but-for" cause of the challenged conduct. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013). The plaintiff must prove that the defendant's retaliatory motive caused it not to hire him — that but for the defendant's ill will

---

[1] The Board does not dispute that Riegel's speech is protected.

[2] In Bell, the Eleventh Circuit conformed to Dahlia v. Rodriguez, 735 F.3d 1060, 1078-79 (9th Cir. 2013) (en banc) (considering whether in the "circumstances" an action is adverse), over the categorical approaches of other circuits, Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000); Sensabaugh v. Halliburton, 937 F.3d 621, 629 (6th Cir. 2019).

towards his exercise of protected speech, he would not have been denied employment. Turner, 65 F.4th at 581.

Even if a plaintiff makes an adequate showing on all three elements, the defendant may still prevail on a "same-decision defense" by proving that it "would have made the same decision even if the plaintiff never engaged in protected activity." See Warren v. DeSantis, 90 F.4th 1115, 1127 (11th Cir. 2024) (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)), opinion vacated and superseded, 125 F.4th 1361 (11th Cir. 2025). See also Fla. Stat. § 1112.3187(10).

Whenever a Section 1983 action is brought against a local unit of government, the plaintiff must also prove that an official government policy was the moving force behind his injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

> A plaintiff can establish [Monell liability] in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice . . . ; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights.[3]

Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., 48 F.4th 1222, 1229 (11th Cir. 2022). See also Christmas v. Nabors, 76 F.4th

---

[3] The third method is met only if the official has "final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). In Florida, superintendents do not have final policymaking authority over employment decisions. Chabad Chayil, Inc., 48 F.4th at 1230 (citation omitted); Mizzell-Bullock v. Seminole Cnty. Pub. Sch., 23-11599, 2024 WL 65199, at *4 (11th Cir. Jan. 5, 2024).

1320, 1329 (11th Cir. 2023).

> It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation. The official policy or custom must be the moving force of the constitutional violation in order to establish liability of a government body under § 1983. A plaintiff must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966– 67 (11th Cir. 2002) (citation modified).

## II.

Riegel asserts two counts: Count I is a claim under 42 U.S.C. § 1983 that the Board refused to hire him because of his protected speech, U.S. Const. amend. I; Count II is a claim against the Board under the Florida Public Whistleblower Act ("PWA"), Fla. Stat. § 112.3187(8)(b) and (c), for the same alleged conduct.

In 2011, Riegel was employed by the Board as a math teacher and athletic coach at Immokalee High School. In 2013, his contract was not renewed. His co-workers had reported that he was "unprofessional"; "inappropriate"; given to "rant[ing]," "rav[ing]," and fits of "visibl[e] ang[er]"; and created an "unsafe," "uncomfortable," and "hostile" working environment.[4] (Doc. #38-1, pp. 161-

---

[4] Letters and signed statements from Nate Sund, Depri Hammond, Jason Plucker, Cyndi Chiorello, and Jackie Corey were read into the record at Riegel's deposition. Adams v. Demopolis City Sch., 80 F.4th 1259, 1266 (11th Cir. 2023) (explaining that a "diary entry" read into a "deposition" transcript may be "part of the summary judgment record"). Riegel has claimed that "a couple of board members" and "Dr. Adkins" have "acknowledged" that "all of these [statements]" are "false," "wrong," and have been

66.) Riegel was "escorted out by a deputy" because people were "afraid that [he] might do something." (Id. at 163.)

Riegel found a job teaching at Oak Creek Charter School. (Doc. #38-1, p. 22.) He stayed there from 2013 to 2022. (Id. at 23.) He then moved to Gateway Charter, where he still works. (Id. at 11, 22.) As a charter-school employee, Riegel has not worked "for" the Board since 2013. (Id. at 11.)

While working at Oak Creek, Riegel engaged in what he describes as "whistleblowing." In June 2018, he sent an email alleging "FRAUD, WASTE, and ABUSE in the Lee County School District." (Doc. #39-7, p. 1.) It had many recipients, some seemingly linked to the Lee County School District (the "School District").[5] Des-

---

"debunked." (Doc. #38-1, pp. 145, 160-61; Doc. #39-6, p. 3.) He provides no evidence in support. Notably, another letter was read into the record at his deposition from a case where Jaqueline Perez, on behalf of her minor daughter, sought a restraining order against him for stalking. (Doc. #38-1, pp. 148-49.) Perez describes Riegel as "[un]stable," "delusional, and a "ticking time bomb." (Id. at 152-53.) As an example, she mentions him "taking credit for Dr. Graham's retirement that he had nothing to do with," much like one of the unsubstantiated allegations he has made in this case. (Id. at 153.) Perez also mentions that Riegel has "threatened to sue several [] people" and "said he's going [after] their state licenses." (Id. at 156.) Riegel has confirmed that is at least partly true. (Id.)

[5] Riegel submits three purported "whistleblowing" emails, but only the June 2018 email was addressed to "@leegov.com" and "@lee-schools.net" recipients. The other two emails went to "oig@fl-doe.org" and "myfloridalegal.com" domains. (Doc. #39-8, p. 1; Doc. #39-9, p. 1.) There is no evidence the Board knew of those. Martin v. Fin. Asset Mgmt. Sys., Inc., 959 F.3d 1048, 1054 (11th Cir. 2020) ("a decision maker cannot have been motivated to retaliate by something unknown to him"). Riegel claims that Jeff Spiro told him "to stop digging into [the Board's] illegal acts and

pite the number of recipients, Riegel gives no evidence that anyone ever responded to him. Even so, he claims that "transformational changes" occurred due to his "whistleblowing": "state-level attention, changes in law, resignations of key personnel and long-term structural reforms." (Doc. #39-1, pp. 3, 4-5.) There is only evidence of one "change" — Robert Dodig "resigned" as the Board's attorney sometime "after" Riegel's "submissions." (Id. at 5 n.2.)[6]

In June 2022 — four years after Riegel's 2018 email — the Board posted a job for a newly created Director of Risk Management position. The posting listed "minimum qualifications" and "knowledge, skills, and abilities" for the role, including:

---

misdeeds." (Doc. #39-1, p. 2.) Spiro was not, and has never been, a Board member. Collier v. Harland Clarke Corp., 820 F. App'x 874, 879 (11th Cir. 2020) ("remarks by non-decisionmakers and remarks unrelated to the decisionmaking process are of little probative value"). Riegel claims that Steve Teuber spoke similarly in 2017. (Doc. #39-1, p. 2.) Teuber was not a Board member when the emails were sent; his words are not evidence of the Board's knowledge at that time. Harland Clarke, 820 F. App'x at 879. Riegel also says he contacted the Governor's "fraud hotline" in May 2023 about "RICO activity" and "fraud." (Doc. #39-1, p. 6.) There is no evidence that the Board knew of that. Martin, 959 F.3d at 1054.

[6] Riegel makes other allegations about the effects of his "whistleblowing" (Doc. #14, pp. 5-6), but "allegations are not evidence." Olson v. Stewart, 737 F. App'x 478, 480 n.3 (11th Cir. 2018) (quoting Wright v. Farouk Sys., Inc., 701 F.3d 907, 911 n.8 (11th Cir. 2012)); Freeman v. Comm'r, Alabama Dep't of Corr., 46 F.4th 1193, 1225 (11th Cir. 2022) (Pryor, J., concurring). His attorney makes other assertions (Doc. #39, p. 11 n.5, p. 16 n.15), but as a general rule, attorney "statements" and "arguments" "are not evidence." Likollari v. U.S. Atty. Gen., 352 F. App'x 335, 337 (11th Cir. 2009) (per curiam); Yun Chen v. U.S. Atty. Gen., 368 F. App'x 995, 998 (11th Cir. 2010); United States v. Lawson, No. 20-14776, 2022 WL 136709, at *2 (11th Cir. Jan. 14, 2022).

    (1)    A bachelor's degree in risk management, finance, or a business-related field.

    (2)    Seven (7) years of administrative experience with progressively responsible duties in risk management, preferably in a public school system.

    (3)    Proven experience successfully managing multiple business or department functions and staff within a large organization at an administrative level.

    (4)    Industry certification.

    (5)    Lean Six Sigma certification.

    (6)    Knowledge of and expertise in interpretation and application of federal, state, and local statutes, laws, regulations, rules, policies, procedures, and current research-based best practices in public education.

    (7)    Knowledge of HIPAA, Public Records, Sunshine Law, FERPA, and other laws and regulations related to student and employee privacy, public information, and records retention.

(Doc. #38-2, p. 1.)

Riegel applied and submitted his resume. Before any decisions were made, however, the Board "suspended hiring and removed the job posting due to the hiring manager taking an emergency medical leave of absence." (Doc. #38-9, p. 3.) Ten months later, in April 2023,[7] the Board put up another post for the position and began accepting applications. Riegel did not apply. The Board began

---

[7] At his deposition, Riegel insisted the job was reposted "six" times, (Doc. #38-1, pp. 87-91), but said that if he were "be[ing] honest," he may "have to get [that information] from the [Board]." (Id. at 90.) Riegel now attests to only two postings. He asserts vaguely that the job would "be posted," "come down," "sit dormant," and "go back up." (Doc. #39-1, p. 5.) But the only specific date on which he attests to seeing the job reposted is "April 2023," which is consistent with the Board's version of events. (Id.)

interviewing the applicants three months later, including Cathy S. Richards,[8] Danielle Jensen,[9] and William Warren Wilson.  On September 6, 2023 – over five years after Riegel's June 2018 email — the Board confirmed Wilson as the new Director of Risk Management.

Wilson has a B.A. in English from Florida A&M University and a J.D. from Florida State University.  (Doc. #38-8, p. 1.)  He has decades of insurance and risk experience as a senior and master claims representative for Nationwide, as a legal adjuster for the School District, as an Examiner for Lloyds of London and Canopius U.S., and as a claims consultant for Prime Insurance Co.  (Id.)

Riegel has a B.A. in Parks & Recreation from the College of St. Francis in Joliet, Illinois.  (Doc. #38-3, p. 1; Doc. #42-1.) He has no other degrees.  (Doc. #38-1, pp. 26-27.)  He has no risk-management certificates, association memberships, or experience. (Id. at 67, 102.)  Other than the single application at issue in this case, Riegel has never applied for a risk-management job, nor

---

[8] Richards has over thirty-five years of experience in the insurance industry.  (Doc. #38-5, p. 2.)  She has numerous certificates and memberships, including Six Sigma, CISR, CSRM, PRIMA, RIMS, FERMA, and is familiar with the laws and regulations of HIPAA, FERPA, public records, Sunshine law, and Statute 440.  (Id. at 1.) She has worked for over ten years as the School District's insurance specialist and coordinator.  (Id.)

[9] Jensen has a B.S. in Finance from Northern Illinois University. (Doc. #38-6, p. 1.)  She has worked as a financial analyst and manager for Dial Corporation, a $1.7 billion company.  (Id.)  She has experience as a director, manager and coordinator at the Cape Coral Charter School Authority and the School District.  (Id.)

has he done so since.  (Id. at 67.)  Riegel does not even know the basics of risk management.  (Id. at 30-36, 122-27, 136.)

Even so, Riegel believes he is "objectively more qualified" than Wilson, and indeed, any other interviewee, because he has made "unique contributions in identifying and mitigating institutional risk." (Doc. #39-1, p. 6.)  He insists that the only reason he was not hired is because the Board has a policy "of categorizing employees [as] ineligible for rehire when they exercise their right to petition the government for redress."  (Id. at 3.)  At his deposition, Riegel could not identify a single person affected by such a policy. (Doc. #38-1, p. 57-59.)  Nothing has changed since.

### III.

From the Court's review of the record, Riegel has failed to identify genuine disputes of material fact on several matters critical to the survival of his claims:  (a) Monell liability; (b) "adverse" conduct by the Board; (c) a "causal connection" between his protected speech and the Board's conduct; and (d) the Board's same-decision defense.

Thus, the Board's motion for summary judgment is **GRANTED**.

#### A. Monell Liability

Riegel has three avenues to prove Monell liability.  He could identify:  (1) an official policy; (2) an unofficial custom or widespread practice so permanent and well settled as to constitute a custom and usage with the force of law; or (3) a municipal

official with final policymaking authority whose decision violated his constitutional rights. Chabad Chayil, Inc., 48 F.4th at 1229.

Riegel does not rely on an "official policy" of the Board.[10] He has not shown a decision by an official with "final decision-making authority."[11] His only colorable argument is that a decision not to hire him because of his protected speech was made pursuant to an "unofficial custom or widespread practice." But that contention fails for lack of evidentiary support.

Proving Monell liability from an unofficial custom or widespread practice requires evidence of "persistent" unconstitutional conduct so "pervasive" and "widespread" as to be the "functional equivalent of a policy adopted by the final policymaker." Khoury v. Miami-Dade Cnty. Sch. Bd., 4 F.4th 1118, 1131 (11th Cir. 2021) (quoting Church v. City of Huntsville, 30 F.3d 1332, 1342–43 (11th Cir. 1994)). The government must have "actual or constructive knowledge" of the challenged conduct. Khoury, 4 F.4th at 1131 (citing Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986)). Evidence of only a "single incident," conduct "too remote

---

[10] He neither alleges nor provides evidence of such a policy.

[11] "In Florida, school superintendents do not have final policymaking authority [over] employment decisions." Chabad Chayil, Inc., 48 F.4th at 1230; Mizzell-Bullock, 2024 WL 65199, at *4. Riegel's attorney *asserts* otherwise, but cites no contrary authority; instead, he parrots his client, who is not an attorney. Compare (Doc. #39, pp. 2-3) and (Doc. #39-1, ¶ 5). See also Fed. R. Civ. P. 11(b)(2).

in time," or conduct not shown to be unwarranted or "[un]constitutional" will fall short.  <u>Khoury</u>, 4 F.4th at 1132–33.

Riegel provides nothing to support his claim of an unofficial custom or practice.  The Eleventh Circuit has affirmed summary judgment in cases with far more evidence.  In <u>Khoury v. Miami-Dade Cnty. Sch. Bd.</u>, the plaintiff gave the following evidence to support her claim challenging conduct from 2015:  (1) "testimony" from "whistleblowing employees" about School Board misconduct in 2012; (2) internal communications and evidence of internal investigations in 2012 and 2013; and (3) "testimony" about seven incidents from 2013 to 2016.  <u>Id.</u> at 1131–32.  The Court affirmed the rejection of that evidence as "either too remote in time" or as "not show[ing] a constitutional violation." <u>Id.</u> at 1132–33 (explaining that conduct from "three years before" was "too remote," that leadership changed before the 2015 incident, and that "no evidence" indicated the prior reported incidents "were unwarranted").  That left only the plaintiff's "single incident," which necessarily could "not establish a custom."  <u>Id.</u> at 1133.

Here, to support his claim of an "unofficial custom or policy" of retaliation against whistleblowers, Riegel relies on two assertions with no evidentiary support.  First, that the Board has entered "dozens – if not hundreds – of settlement agreements" which required employees to "either resign or waive any right to future employment."  (Doc. #39-1, ¶ 6.)  When asked for details at his

- 12 -

deposition, Riegel said he had no personal knowledge of and was "not [] privy" to such information. (Doc. #38-1, p. 51.) When asked to name one specific affected person, he could not. (Id. at 51-53.) Second, Riegel claims that the Board categorizes employees as "ineligible for rehire" even when no settlement agreements are reached. (Doc. #39-1, ¶ 6.) But again, at his deposition, Riegel could not identify a single affected person. (Doc. #38-1, p. 57-59.) Nothing has changed since.

Unlike Khoury, Riegel gives no evidence of specific incidents, affected individuals, or dates, and like Khoury, he gives no evidence that the alleged "dozens — if not hundreds — of settlement agreements" involved unwarranted or unconstitutional conduct. Thus, even more so than Khoury, his claim turns on a "single incident," which cannot "establish a custom." 4 F.4th at 1133.

Thus, the motion for summary judgment is due to be granted.

**B. Adverse Conduct[12]**

As mentioned earlier, the first element of Riegel's retaliation claim, "protected speech," is undisputed. As to the second element, the Board's action is "adverse" if it would likely chill the exercise of protected speech. Turner, 65 F.4th at 580. To answer that question, the Court asks whether the challenged conduct

---

[12] With the exception of the just-concluded section on Monell liability, throughout this Opinion and Order, the same analysis applies to Riegel's Section 1983 claim and his state-law PWA claim. Elver, 791 F. App'x at 58; Fla. Stat. § 1112.3187(10).

would "objectively" chill or deter protected speech. Bell, 6 F.4th at 1379. That question is resolved "narrowly," on the "circumstances" of this case. Id. at 1378-79.

The basic circumstances of this case are that an employer did not hire an applicant to a job posting that was taken down and closed who did not reapply when hiring was reopened, and the job reposted, almost a year later. That is not conduct, considered "objectively," that would chill or deter protected speech. See id. at 1378-79 (holding that under the narrow circumstances of a case, a temporary suspension was not adverse). Other circumstances bolster that conclusion. Riegel was unqualified — on paper and in fact — for the Director of Risk Management role. A reasonable person's protected speech would not be chilled or deterred by the Board's refusal to hire Riegel, whose lack of qualifications is clear to everyone other than himself.

On this ground as well, the motion is due to be granted.

### C. Causation

To meet the third element of his claim, Riegel must show a "causal connection" between the Board's "retaliatory animus" and his "injury." Nieves, 139 S. Ct. at 1722 (quoting Hartman, 547 U.S. at 259). The desire to retaliate must be the "but-for" cause of the challenged conduct. Nassar, 570 U.S. at 352. In other words, Riegel must prove that the Board's retaliatory motive caused it not to hire him — that but for the Board's ill will towards his

exercise of protected speech, it would not have denied him employment.  Turner, 65 F.4th at 581.

"[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (citing Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir.2004) (citing Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir.2001))).

Here, there was a delay of over five years between Riegel's email in June 2018 and the Board's challenged conduct in September 2023.  As discussed below, no other evidence tends to show causation.  So Riegel's retaliation claims fail "as a matter of law."[13] Cooper Lighting, 506 F.3d at 1364.

Riegel gives no evidence that the 2023 Board knew of any whistleblowing.  In the absence of such evidence, he cannot show that such activity "motivated [the Board] to retaliate."  Martin, 959 F.3d at 1054.  Jeff Spiro was not, and has never been, a Board member; his statements are irrelevant.  Harland Clarke, 820 F. App'x at 879 ("remarks by non-decisionmakers and remarks unrelated to the decisionmaking process are of little probative value"). Steve Teuber was not a Board member when Riegel sent the June 2018

---

[13] Even if Riegel's retaliation claims do not fail as a matter of law, causation still is not established on this record.

email; his statements cannot be used to attribute knowledge to the Board. Id. at 879.

Riegel's claims turn on his generous — some have said, "delusional"[14] — assessment of his significance in matters of State. Notably, despite the forcefulness and detail of Riegel's allegations, his affidavit uses only conclusory, vague, and general terms. See (Doc. #39-1, pp. 3, 4-5) (claiming "state-level attention, changes in law, resignations of key personnel[,] and long-term structural reforms" because of his "whistleblowing").[15] Indeed, Riegel only attests to one specific "change" caused by his "whistleblowing": Robert Dodig's resignation at some point "after" certain "submissions" were made. (Doc. #39-1, p. 5 n.2.)

That Dodig resigned sometime "after" those submissions — whose contents, dates, and recipients are unknown — is irrelevant; "proving a *temporal* relationship . . . does not establish a *causal* relationship." Kilpatrick v. Berg, 613 F.3d 1329, 1343 (11th Cir. 2010) (rejecting the "*post hoc ergo propter hoc*[16] fallacy which assumes causation from temporal sequence"); Montgomery v. Bd. of

---

[14] See (Doc. #38-1, pp. 152-53).

[15] Conclusory statements in an affidavit cannot withstand summary judgment. United States v. Stein, 769 Fed. App'x 828, 832-33 (11th Cir. 2019). Statements about what an affiant "subjectively believed" "as opposed to" actually "knew" do not give rise to genuine issues of material fact. Id. Affidavit statements that do not "set out facts . . . admissible in evidence" are disregarded. Id.

[16] A Latin phrase that translates roughly to "after this, therefore because of this."

Trs. of the Univ. of Alabama, No. 2:12-CV-2148-WMA, 2015 WL 1893-471, at *4 (N.D. Ala. Apr. 27, 2015) (explaining that in post-Nassar Eleventh Circuit rulings, "*post hoc, ergo propter hoc*" does not prove "activity was the 'but-for' cause of [adverse conduct]"). Despite the breadth of Riegel's allegations, there is no evidence anyone has ever cared one way or the other about his "submissions."

On this ground, too, the motion is due to be granted.

### D. Same-Decision Defense

Even if Riegel could establish all three elements of retaliation (he cannot), the Board would still prevail by proving that it would have made the same decision, i.e., hired Wilson instead of Riegel, even if Riegel had "never engaged in protected activity." See Warren, 90 F.4th at 1127 (citing Doyle, 429 U.S. at 287); Fla. Stat. § 1112.3187(10).

The Board hired Wilson, who has a J.D. (Doc. #38-8, p. 1), a business-related degree, (Doc. #38-2, p. 1.)  Wilson has extensive experience in insurance and risk and worked as the School District's legal adjuster (Doc. #38-8, p. 1), which met the Board's need for experience in "risk management . . . in a public school system," (Doc. #38-2, p. 1.)  As Wilson was the only candidate who was an attorney in good standing, see William W. Wilson, Florida Bar, http://bit.ly/4eEriXB, he was far and above the most likely to have expertise interpreting and applying federal, state, and local laws and regulations, including those "related to student

- 17 -

and employee privacy, public information, and records retention." (Doc. #38-2, p. 1.)  As for Riegel's lack of qualifications, his deposition speaks for itself.  (Doc. #38-1, pp. 26-27, 30-36, 98-100, 102, 117, 122-37.)

Thus, even if Riegel could overcome summary judgment on all three elements of retaliation, the Board would still prevail on a same-decision defense.  Doyle, 429 U.S. at 287.

Accordingly, it is now

**ORDERED**:

(1) Defendant The School Board of Lee County, Florida's Motion for Summary Judgment (Doc. #37) is **GRANTED.**

(2) The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant The School Board of Lee County, Florida and against Plaintiff Kevin Riegel, who shall take nothing.

(3) The Clerk of Court is further **DIRECTED** to terminate all pending motions and deadlines and to close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of July 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record